McBRIDE, Judge.
This is a claim for the balance due on “certain goods, wares and merchandise” sold to defendant as shown on the invoice annexed to and made part of the petition. The invoice describes the goods, wares and merchandise as “partially finished parts for 3" and 8" special standard ferrosteel body F. E. high lift angle valves” (which will be hereinafter referred to as the “special valves”), and shows the aggregate debit charges to be $692.73, less a payment of $300, leaving a balance of $392.73, for which the suit was filed.
The answer admits that after placing an order with plaintiff for the special valves defendant made cancellation thereof, but alleges that defendant was compelled to do so for the reason that plaintiff subsequently admitted its inability to make timely shipment of the valves, and that whereas time was “of the essence,” defendant was forced to procure the valves from-another dealer. Defendant disavows any liability unto plaintiff.
The suit was dismissed and plaintiff appeals.
Defendant is engaged in the business of shipbuilding and was in the process of constructing a sea-going barge for an oil company. On May 11, 1954, defendant ordered in writing from plaintiff certain fixtures to be used in the work. This original order is not contained in the record. On June 11, 1954, the defendant gave a “Change Order #1” to plaintiff which cancelled the original order in its entirety and substituted therefor an order for certain fixtures, among which were the special valves above described. Mr. John W. Calmes, president of the defendant corporation, testified that it is customary and usual in the trade for changes to be made in original orders given for fixtures.
The substituted or changed order stipulates that the shipping date of the fixtures was to be “7/1/54.” Mr. Calmes states that about July 12 or 13, 1954, when shipment was then already overdue, Mr. Walker, plaintiff’s local agent, called at defendant’s shipyard and stated that, the special valves could not be shipped “for twelve weeks.”
*926 ■ Mr. Calmes was under the impression when the order was placed that the plaintiff carried the special valves in its stock and he was wholly unaware that they were to be manufactured as per the order. He further stated that when he learned there would be a twelve-week delay in shipment, he was forced to purchase the special valves from another concern which had them in stock, and plaintiff was given notice that the order which had been placed with it was cancelled. The invoice sued upon represents charges made for the partially finished parts for the two special valves. Mr. Calmes denies that he had any verbal or written understanding with plaintiff that there would be any charges as a result of the cancellation of the order. In support of his position that there was to be no charge, he produced a letter received from plaintiff dated July 26, 1954, signed by R. R. Walker of its sales division, reading as follows:
“Calmes Engineering Company,
“Industrial Canal at Florida Ave.,
“New Orleans, La.
“Att: Mr. George B. Taggert,
“Manager, Purchases
Re: Your Order # 29080^4869
“Gentlemen: This is to acknowledge your letter of July 13, and further confirm your telephone conversation with our Chicago Office and the undersigned. As stipulated in your letter, you agreed that all the valves shown on Change Order No. 1 — 6/11/54, with the exception of items 2-7 and 2-8, are to be manufactured and shipped to you not later than the week of August 30. We will further endeavor to make shipment the week of August 23, or sooner. “In reference to items 2-7 and 2-8, be advised that the 3" and 8" high lift angle valves are cancelled in their entirety and this is done without cost to you.
“Please be assured that I, personally, and our people in Chicago, will do everything possible to maintain their shipping promise, for we realize the importance of getting these valves to you on schedule.
“Do not hesitate to inquire, at any time, should anything further be needed.
“Yours truly,
“Crane Co.
“By: R. R. Walker
“Sales Division”
The items referred to in the letter as “2-7 and 2-8” are the special valves which are the subject matter of this suit.
Plaintiff failed to produce any witnesses at the trial and the absence of Mr. Walker, who had all the negotiations with Mr. Calmes, at once appears most conspicuous. Counsel for plaintiff sought to explain the failure to call Mr. Walker as a witness by saying that he had reported to the wrong section of the court and that his presence in the court building was unknown to counsel. However, the trial attorney for defendant states that after the completion of the trial in the lower court, he offered to reopen the case if plaintiff’s attorney felt that his client’s interest required the production of Mr. Walker as a witness but, notwithstanding this, plaintiff’s attorney did not see fit to take advantage of this offer.
Plaintiff’s case rests solely and exclusively on a letter dated January 26, 1956, written by Mr. Walker and addressed to the defendant, which was offered and received in evidence over the objection of defendant’s counsel. The letter reads thus:
“Calmes Engineering Co., Inc.
“P. O. Box 8095
“New Orleans 22, Louisiana
“Attn: Mr. J. W. Calmes
“Re: Your Order # 29080^-869
Crane Co., Nor-1286
Invoice # 2229-93 — Amount $692.73
“Dear Mr. Calmes: -
“This letter is to confirm our conversation this date regarding above-mentioned invoice for termination charges and billing for casting in parts which were previously delivered. It is now *927 agreed that our invoice in the amount of $692.73 has been accepted by you and payment in full is to be expected by Crane Co. Due to unusual circumstances we agreed to extend payment of this invoice as follows:
“On February 10th the amount of $300.00 will be paid.
“On March 10th, or sooner, the sum of $392.73 will be paid.
“To avoid any further delay or misunderstanding please be sure that payments are made on the above-mentioned dates and checks covering will be picked up by the undersigned.
“We wish to thank you for your cooperation in this transaction and trust that you will fulfill your commitments regarding payment.
“Yours truly,
“Crane Co.
“By R. R. Walker
“Sales Division”
Mr. Calmes freely acknowledged receipt of the above letter from plaintiff’s representative, and he also admits that he made no written reply thereto. However, he denies that the $300 payment of February 23, 1956, was made in compliance with the terms of Mr. Walker’s letter of January 26, 1956, and insists that the payment was only for the purpose of “good will.”
Mr. Calmes testified that while he made no written reply to the January 26, 1956, letter, he spoke to Mr. Walker several times about it protesting the charges for the cancellation of the order for the special valves. He says he also spoke to Mr. Walker after the suit was filed and that Mr. Walker stated “maybe we can still get this straightened out.”
We have given careful consideration to the record and find no error in the judgment dismissing the suit; on the contrary, we believe that the judgment is warranted by the record as it stands. There is no question that Mr. Walker held the key to the whole situation insofar as plaintiff’s case is concerned, and why counsel for plaintiff did not seek to have the case reopened for the purpose of producing Mr. Walker as a witness is beyond us. It may be true that Mr. Walker did wander into the wrong section of the court and that his presence there was unknown, but surely plaintiff’s counsel should have realized that the success of plaintiff’s case depended solely on the evidence which Mr. Walker might have supplied.
We do not understand why there was a subsequent charge made because of the cancellation of the order when Mr. Walker’s letter of July 26, 1954, plainly states that the order was cancelled “without cost to you.” Moreover, we think defendant was fully justified in rescinding the order after it was learned that there would be a twelve-week delay beyond the stipulated shipping date.
Walker’s letter of January 26, 1956, is purely a self-serving document, and in view of the fact that Mr. Calmes spoke to him subsequently and denied the indebtedness, the letter standing alone cannot serve as the predicate for a judgment in plaintiff’s favor. We are satisfied that the $300 payment of February 23, 1956, was, as stated by Mr. Calmes, made as a token of “good will” and not in compliance with the terms of Mr. Walker’s letter.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.